UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELGIN BAILEY | No.  2:21-cv-500-KJN |
| Plaintiff, | ORDER |
| v. | (ECF Nos. 15, 16.) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits.[1]  In his summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred in failing to offer clear and convincing reasons in evaluating the credibility of plaintiff's testimony regarding his symptoms. Plaintiff seeks a reversal of the Commissioner's final decision or a remand for a grant of benefits. The Commissioner opposed, and filed a cross–motion for summary judgment.

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

///

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties consented to proceed before a Magistrate Judge for all purposes.  (ECF Nos. 7, 10, 11.)

1

I. **RELEVANT LAW**

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a). An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

## II.     BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

In 2011, the Commissioner determined plaintiff eligible for Disability Insurance Benefits in an initial application. (Administrative Transcript ("AT") 82, 100.) In 2014, after returning to work, plaintiff reapplied for Disability Insurance Benefits, alleging an onset date of March 6, 2018. (AT 183.) Plaintiff claimed disability due to "Right Leg Below the Knee Amputation; Gout; Osteoarthritis of the Bilateral Shoulders; Degenerative Disc Disease; Neuropathy of the Left Foot; Obesity." (AT 28, 51-52.) Plaintiff's application was denied initially and upon reconsideration, and he sought review with an ALJ. (AT 105-11.) At a February 2020 video hearing, plaintiff testified about his conditions, a medical expert testified regarding plaintiff's impairments, and a vocational expert testified regarding the ability of a person with similar limitations to perform various jobs. (AT 51-80.)

On March 10, 2020, the ALJ issued a decision determining plaintiff was not disabled. (AT 25-40.) As an initial matter, the ALJ determined plaintiff met insured status through December 31, 2022. (AT 27.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since March 6, 2018. (AT 27.) At step two, the ALJ determined plaintiff had the following severe impairments: right leg below the knee amputation; gout; osteoarthritis of the bilateral shoulders; degenerative disc disease; neuropathy of the left foot; and obesity. (AT 28.) The ALJ categorized plaintiff's impairments as conditions affecting his lower and upper extremities, disc disease, and obesity. (AT 31-37.) At step three, the ALJ determined plaintiff's impairments did not meet any listings. (AT 29-30.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform light work, except he "can stand and walk for four hours total in an eight-hour workday' sit for six hours in an eight-hour workday; should avoid heights and hazards; no climbing of ladders; no crawling; and can occasionally climb ramps and stairs, stoop, crouch, and kneel." (AT 30.) In crafting this RFC, the ALJ stated he considered plaintiff's intense, persistent, and limiting symptoms alongside the medical evidence and opinions of the medical sources. Id. This included plaintiff's oral and written testimony (AT 31), medical expert testimony (AT 31-33), and prior administrative medical findings regarding plaintiff's physical impairments (AT 39-40). Relevant

here, plaintiff alleged his conditions affecting his lower and upper extremities, his degenerative disc disease, and his obesity caused "ongoing pain, weakness, mobility issues, and general loss of function," making it difficult for him to stand and walk for long periods of time. (AT 65-67.) The ALJ determined that plaintiff's impairments could reasonably cause his alleged symptoms. (AT 31.) However, the ALJ rejected the alleged severity of his symptoms due to the opinions of a testifying medical expert and plaintiff's treating-physicians, evidence of effective conservative treatments, plaintiff's inconsistent statements, and other evidence in the medical record. (AT 31-40.) The ALJ concluded that plaintiff was not disabled and capable of performing past relevant work as a Telecommunication Specialist. (AT 40-41.)

Plaintiff appealed to the Appeals Council, which denied plaintiff's request September 14, 2020. (AT 11.) Plaintiff then filed this case, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 15, 16, 17.)

### III.  ISSUE PRESENTED

Plaintiff contends the ALJ erred in not providing clear and convincing reasons, or by failing to consider the entire case record, when evaluating the credibility of his testimony regarding the severity of his symptoms. (ECF Nos. 15, 17.) Plaintiff further alleges the ALJ improperly discounted plaintiff's testimony by providing only a blanket statement, cherry picking the record, and improperly relying on plaintiff's modified daily activities in discounting his testimony. (ECF No. 15 at 14-16.)

The Commissioner disagrees, arguing the ALJ properly provided sufficient reasoning supported by objective medical evidence and plaintiff's improvement with treatments, inconsistent statements, and daily living activities in evaluating the credibility of plaintiff's subjective complaints of disability. (ECF No. 16.) Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and should result in affirmance. Id.

### IV.  DISCUSSION

#### Legal Standards

In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014-15).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, prescription of conservative treatment, inconsistencies between a claimant's testimony and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); see also Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (noting that support for discounting a claimant's symptom testimony may include testimony from physicians and third parties concerning the nature, severity, and effect of claimant's alleged symptoms, and the effectiveness of prescribed medical treatments). A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

Broadly speaking, a claimant's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. See Treichler v. Comm'r, 775 F.3d 1090, 1106 (9th Cir. 2014).

**Analysis**

A. **The ALJ properly relied on medical evidence, the effectiveness of prescribed treatments, and plaintiff's inconsistent statements in discounting plaintiff's subjective symptom testimony.**

Plaintiff alleges the severity of the symptoms caused by his impairments results in complete disability. Plaintiff argues his "ongoing pain, weakness, mobility issues, and general loss of function" resulting from his below-knee amputation and diagnoses of gout, neuropathy of the left foot, osteoarthritis of the bilateral shoulders, degenerative disc disease, and obesity precludes him from working entirely. (AT 65-67, EFC No. 15 at 7, 15.) Although the ALJ determined plaintiff's impairment could reasonably cause plaintiff's alleged symptoms, the ALJ found the severity of plaintiff's reported symptoms was unsupported by medical evidence, the effectiveness of prescribed treatments, and plaintiff's inconsistent statements. (AT 31-40, 50-54.) Rather than discounting plaintiff's conditions entirely, the ALJ accounted his impairments by restricting the level of work plaintiff could perform to a sedentary level. (AT 30, 40.)

1. Lower Extremities:  Below-Knee Amputation, Gout, Left-Foot Neuropathy.

Regarding plaintiff's below-knee amputation, the ALJ considered plaintiff's testimony that long periods of wearing a prosthetic caused discomfort and that plaintiff experienced "phantom ghost pains" at the amputation site. (AT 73-75.) In discounting the severe aspects of this testimony, the ALJ relied on a consultative exam of plaintiff's right leg finding "no distress, intact pulses, no signs of stamp or infection of stump tenderness" and a "full range of motion" in discounting the alleged severity of plaintiff's symptoms. (AT 32, citing 383-84.) Beyond objective medical evidence, the ALJ considered the effectiveness of plaintiff's treatments, noting plaintiff is "able to ambulate with a right leg prosthesis" and that physical therapy showed "no deviations in his gait." (AT 31, citing 383-84, 926.) Thus, the ALJ considered plaintiff's subjective symptoms of his amputation, but ultimately relied on plaintiff's medical records and the effectiveness of prescribed treatments to discredit his testimony. See Rollins, 261 F.3d at 857 (noting medical records can be considered, but cannot be the sole basis in rejecting a claimant's testimony.); see also Thomas, 278 F. 3d at 958-59 (9th Cir. 2002) (noting the effectiveness of prescribed treatments is a clear and convincing reason to discount claimant's testimony).

Addressing plaintiff's gout affecting his lower extremities, the ALJ considered plaintiff's testimony that the condition causes "god-awful pain" and the joints in his legs to become red and swell. (AT 65.) In discounting the severe aspects of this testimony, the ALJ relied on medical expert testimony describing plaintiff's gout as "well-controlled" in discrediting plaintiff's subjective symptom testimony. (AT 31, citing 52.) Additionally, the ALJ relied on the effectiveness of plaintiff's gout treatments, where plaintiff "manages his [gout] with medication and [has] additional medication to treat flare-ups" to support discrediting plaintiff's testimony. (AT 32, citing 926.) These are clear and convincing reasons to discount his testimony. See Rollins, 261 F.3d at 857; see also Thomas, 278 F. 3d at 958-59 (9th Cir. 2002).

As to plaintiff's neuropathy in the left foot, the ALJ considered plaintiff's testimony of his "stress-related issues" from compensating for his right amputated leg, in addition to "[loss] of a portion of feeling in [his] foot." (AT 69-70.) In discounting the severe aspects of this testimony, the ALJ relied on medical records indicating plaintiff exhibited "no distress, normal motor activity, demonstrated normal strength and sensation" in his left foot, despite plaintiff's complaints of weakness and loss of feeling. (AT 33, citing 406, 582, 1176.) The ALJ further considered inconsistencies of plaintiff's own statements where plaintiff "denied radiating leg pain, focal weakness, or numbness" and that he felt better after completing physical therapy and daily home exercises. (AT 33, citing 1176, 1205.) These are clear and convincing reasons to discredit the more severe aspects of plaintiff's subjective symptoms. See Rollins, 261 F.3d at 857; see also Tommasetti, 533 F.3d at 1039 (noting prior inconsistent statements by a claimant concerning symptoms can be a clear and convincing reason to discount claimant's testimony.)

   2. Upper Extremities:  Osteoarthritis of the Bilateral Shoulders, Gout.

Addressing plaintiff's osteoarthritis of the bilateral shoulders, the ALJ considered plaintiff's testimony that the condition caused him back pain and limited his ability to sit and stand back up. (AT 73.) In discounting the severe aspects of this testimony, the ALJ relied on medical records revealing "no distress, normal strength in both upper extremities, and no tenderness or redness" (AT 34, citing 916) and x-rays finding "no evidence of acute fracture or disposition" or "acute abnormalities" (AT 34, citing 437, 698). The ALJ further considered

medical expert testimony that plaintiff's "orthopedic issues would not keep him from attending work on a regular basis." (AT 34, citing 53.) In addition to the medical record, the ALJ relied on the effectiveness of plaintiff's treatments, including the reduction of pain from acupuncture, subacromial injections, cortisone steroid injections, and physical therapy, in determining inconsistencies with plaintiff's testimony. (AT 34-35, citing 893, 899, 904, 984.) Thus, the ALJ properly determined that medical records and the effectiveness of treatments contradicted the more severe aspects of plaintiff's testimony. See Rollins, 261 F.3d at 857; see also Thomas, 278 F. 3d at 958-59 (9th Cir. 2002).

Regarding plaintiff's gout affecting his upper extremities, the court notes the ALJ considered plaintiff's statements regarding the "god-awful pain," redness, and swelling in the joints of plaintiff's hands and elbows. (AT 65.) In discounting the severe aspects of this testimony, the ALJ relied on opinions from plaintiff's treating-physician that "there was no indication that [his gout] episodes were more than brief" and expert medical testimony describing his gout as "well-controlled" to discount the plaintiff's subjective symptoms. (AT 35, citing 382, 385; AT 35, citing 382, 402.) Beyond the medical record, the ALJ considered the effectiveness of treatments prescribed to treat plaintiff's gout, including steroid injections and regular doses of Indocin, which plaintiff "tolerated well." (AT 35, citing 382, 403.) These are clear and convincing reasons to discount plaintiff's testimony. See Rollins, 261 F.3d at 857; see also Thomas, 278 F. 3d at 958-59 (9th Cir. 2002).

3. Degenerative disc disease

Plaintiff challenges the ALJ's treatment of his testimony regarding his symptoms caused by degenerative disc disease. (ECF No. 15 at 13.) The ALJ considered plaintiff's testimony that the condition required him to often sit with pillows and that the pain made it difficult for him to stand back up. (AT 73.) In discounting more severe aspects of plaintiff's testimony, the ALJ relied on medical records, including scans finding plaintiff exhibited "no cord compression or cord signal abnormality" and "no muscle spasms" to discount plaintiff's testimony. (AT 36, citing 383, 846, 1050.) The ALJ further considered medical opinions that plaintiff has a "normal range of motion" and exhibited "normal motor activity." (AT 36, citing 982, 1177-178.) In

addition to objective medical evidence, the ALJ considered the effectiveness of treatments and inconsistencies in plaintiff's statements, relying on plaintiff's statement that "steroid injections and Ibuprofen were effective in reducing his pain levels" and "cortisone steroid injections and physical therapy were beneficial and helped reduce these symptoms." (AT 36-37, citing 648, 984.) Thus, the ALJ provided clear and convincing reasons to discount this testimony. See Rollins, 261 F.3d at 857; see also Thomas, 278 F. 3d at 958-59 (9th Cir. 2002); see also Tommasetti, 533 F.3d at 1039.

4. Obesity

Plaintiff claims the ALJ improperly discounted his testimony regarding the severity of his symptoms caused by obesity. (ECF No. 15 at 13.) The court notes plaintiff did not testify directly to his obesity, but the ALJ did consider plaintiff's statements regarding his other impairments, including plaintiff's neuropathy in the left foot aggravated by the stress of plaintiff's shifted weight to compensate for the prosthetic on his right leg. (AT 37, citing 69-70.) The ALJ then relied on medical expert testimony that plaintiff could "stand and walk for a total of four hours in an eight-hour workday" to discredit plaintiff's alleged severity of pain. (AT 30.) The ALJ further relied on the effectiveness of treatments prescribed to improve plaintiff's conditions, cumulatively enhanced by obesity, including plaintiff's own statements that physical therapy (AT 31, citing 383–84) and daily home exercises (AT 33, citing 1176, 1205) improved his symptoms. The court finds that despite clarity in the ALJ's evaluation of plaintiff's obesity, the ALJ's rationale here can be discerned and is supported by substantial evidence. See Treichler v. Comm'r, 775 F.3d 1090, 1099 (9th Cir. 2014) (describing an ALJ error as harmless if "the ALJ's path may reasonably be discerned despite the error."); see also Rollins, 261 F.3d at 857; Thomas, 278 F. 3d at 958–59 (9th Cir. 2002).

B. **Plaintiff's remaining arguments do not amount to reversible error.**

Plaintiff broadly challenges the ALJ's determination by alleging the ALJ provided only a blanket statement in discrediting plaintiff's subjective symptoms, and otherwise cherry picked the record. (ECF No. 5 at 14-16.) However, as noted in Section A above, the court finds the ALJ relied on sufficient evidence throughout the record and appropriately addressed plaintiff's

conflicting testimony.  See Treichler, 775 F.3d at 1099; see also Tommasetti, 533 F.3d at 1039.

Plaintiff also claims the ALJ improperly analyzed the plaintiff's modified daily activities. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (noting daily activities can support an adverse credibility determination if they contradict the claimant's testimony or meet the threshold for transferable work skills).  The court finds that even assuming arguendo this contention, the ALJ provided other clear and convincing reasons to support the determination.  Thus, plaintiff's claim that the ALJ improperly considered plaintiff's daily activities amounts to harmless error at best.  See Ford, 950 F.3d at 1154.

## V.     CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED;
2. The Commissioner's cross-motion (ECF No. 16) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of Court is directed to CLOSE this case.

Dated:  August 30, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

SD/BH,bail.500